466 So.2d 900 (1985)
Herbert WALLACE
v.
STATE of Mississippi.
No. 54646.
Supreme Court of Mississippi.
March 20, 1985.
Rehearing Denied April 10, 1985.
*901 Forrest Johnson, Sr., Forrest Johnson, Jr., Johnson & Johnson, Natchez, for appellant.
Bill Allain, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Herbert Wallace was jointly indicted with Anthony Jackson, Ronald Fitzgerald and Ronnie Ross in the Circuit Court of Adams County for armed robbery. After three (3) mistrials, one of which resulted from prosecutorial misconduct and the other two on account of the jury's being unable to reach a verdict, Wallace was found guilty, but the jury could not agree upon punishment. Thereupon, the trial judge sentenced him to twenty-five (25) years in custody of the Mississippi Department of Corrections. Wallace has appealed from that conviction and sentence and assigns two (2) errors in the trial below.
About 9 p.m. on December 5, 1980, three (3) males entered the Minit Man #9 convenience store in Adams County and robbed it. Felix Brown and Tommy Byrd, employees of the store, were working at the time. According to them, one of the robbers wore a red ski mask and the other two had stockings over their heads and were wearing stocking hats. The man with the red ski mask was holding a gun on Brown, who thought the robber was wearing a blue jump suit. Byrd thought one of the other men wore the blue jump suit. The robbers took approximately twelve hundred dollars ($1,200) in cash, checks, and food stamps. Brown and Byrd were ordered to lie down on the floor.
As the three men left the store, Arthur Byrd, uncle of Tommy Byrd, was walking up to the convenience store. He watched them because they were running. They passed within a few feet of Byrd, jumped down into a ditch and headed toward Highway 61. The men were wearing the same clothes and masks described by the employees of the store. They passed out of view and, in a few seconds, he saw a white Pontiac car with an antenna on the rear, and occupied by four males, heading toward the highway. Byrd suspected something had happened in the store. He entered the store, learned about the robbery, and called and reported it to the sheriff's office.
Phil Marler, a sheriff's deputy, received a description of the white Pontiac and passed a vehicle fitting that description. He stopped the car, which was driven by Ronald Fitzgerald. Herbert Wallace was on the rider's side in front; Anthony Jackson and Ronnie Ross were on the backseat. The car belonged to Wallace's mother. A stocking was found tied to the waist of Anthony Jackson. Deputy Sheriff Tommy Ferrell was called to the scene, and he searched the automobile. He found fifty-four dollars ($54.00) in an ashtray on the right rear side of the car, where Jackson was sitting. Additional cash, checks, eight (8) ticket stubs marked Minit Man #9, one (1) marked Minit Man #10, and a gun were found stashed in the opening for the sunroof in the car. A red ski mask was found on the front seat. Ownership of the gun could not be traced and no fingerprints were lifted.
*902 Anthony Jackson testified in behalf of Wallace and stated that he and Wallace had been drinking beer on the afternoon and night of December 5 and riding around. According to him, Wallace ran off the road and hit something, causing a flat tire. They changed the flat and were beginning to pull off when Ronald Fitzgerald, Ronnie Ross and a Michael Todd Douglas ran up and asked for a ride. Since they were drunk, Fitzgerald drove the automobile. Douglas ran off toward a blue Nova across the street. Jackson and Wallace knew the other males, but Jackson denied seeing any money or guns in the car. Wallace's testimony was essentially the same as that of Jackson. He also denied going in the store that night and that he saw guns or money.

I.

THE LOWER COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS PRIOR TO TRIAL BASED UPON CONSTITUTIONAL GROUNDS.
At the three preceding trials, which ended in mistrials, appellant was tried along with Anthony Jackson. Prior to the trial which resulted in the conviction of appellant, Anthony Jackson entered a plea of guilty to grand larceny. Appellant contends that the fourth prosecution, resulting in his conviction, was barred on double jeopardy grounds. Article 3, § 22, Miss. Const. 1890, provides the following:
No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution.
In Mallette v. State, 349 So.2d 546 (Miss. 1977), this Court held that the lower court did not err in refusing to dismiss because of two previous mistrials. Mallette was convicted of manslaughter and appealed, contending that the conviction after two mistrials as a result of hung juries placed him in double jeopardy. The Court held that "... in order for a plea of former jeopardy to avail, it must appear that the defendant was actually acquitted or convicted in a former trial on the merits of the crime for which he is again sought to be convicted." 349 So.2d 548. See also Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); Bounds v. State, 271 So.2d 435 (Miss. 1973); Smith v. State, 158 Miss. 355, 128 So. 891 (1930); and State v. Moor, 1 Miss. [Walk.] 134 (1823).
The jury's inability to agree is not an acquittal. In Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the Court said:
The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country. Instead, without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. The rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its law.
434 U.S. at 509, 98 S.Ct. at 832, 54 L.Ed.2d at 730.
In Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), the United States Supreme Court stated:
The double jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.... *903 What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.
336 U.S. at 688-689, 69 S.Ct. at 837, 93 L.Ed. at 978.
We are of the opinion that double jeopardy did not attach as a result of the previous mistrials, and that this assignment is without merit.

II.

THE LOWER COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS AND MOTIONS FOR MISTRIAL AS TO THE DISTRICT ATTORNEY'S QUESTIONING OF A CO-INDICTEE DEFENSE WITNESS AS TO HIS GUILTY PLEA TO A LESSER CHARGE AND REFERENCE TO SAME ON CLOSING ARGUMENT.
As previously stated, appellant and Anthony Jackson had been codefendants at three previous trials and, prior to the fourth trial, Jackson entered a plea of guilty to grand larceny. During cross-examination by the district attorney the following transpired:
Q. Mr. Jackson, you admit your guilt in this case; don't you?
A. Sir.
Q. You admit guilt in this case; didn't you?
A. I had made a plea for guilty.
Q. You admitted you were guilty; is that correct?
A. Yes, Sir.
Q. Under oath; is that correct?
A. Yes, Sir.
BY MR. A. JOHNSON:
Your Honor, we object to that, and we ask that the jury be instructed to disregard that.
BY THE COURT:
Well, I'm going to overrule your objection; he was your witness, and you placed him on the stand.
BY MR. A. JOHNSON:
And, Your Honor, we would further move for a mistrial at this time, and I'd like to be heard on it.
BY MR. F. JOHNSON:
Your Honor, I think it would be better to be done out of the presence of the jury.
BY THE COURT:
Mr. Johnson, I know the law you're gonna rely on, and it has no applicability to one of your witnesses now.
BY MR. F. JOHNSON:
Is Your Honor willing to read this case?
BY THE COURT:
Yes, Sir. Let's let the jury be excused.
(The following was heard OUT OF THE PRESENCE OF THE JURY:)
BY THE COURT:
Let the record show that the Court having examined the case of the State of Mississippi Versus Gable Henderson and appreciating the fact that in that case the witness was cross examined by the District Attorney as to the question of whether he had been tried and convicted by a jury, does not present the same question as is before the Court today. That what is before the Court today is the fact that a witness put on the stand by the defense has simply been asked whether or not he admitted guilt to which the witness answered yes; that the Court finds that there is no error in requesting of a witness as to an admission that has been made that is inconsistent with his present testimony; that this is valid grounds for impeachment of the witness. And for that reason the motion for mistrial will be overruled.
During argument by the district attorney, the following bill of exceptions was preserved:

*904 SPECIAL BILL OF EXCEPTIONS
Be it remembered that on the 11st [sic] day of November, 1982, upon the trial of the Defendant, the District Attorney in his closing argument made the following statement:
"Anthony Jackson said he admitted his guilt under oath. Yet he still sits there and agrees that maybe they've done this."
Whereupon Defendant objected, which objection was sustained; whereupon defendant moved the court to instruct the jury to disregard the statement, which the court so instructed the Jury to do; whereupon Defendant moved the Court for a mistrial, which motion the Court overruled.
This the 11th day of November, 1982.
 /s/ Edwin E. Benoist, Jr. 
 Circuit Judge
Appellant contends that the examination by the district attorney and his argument were reversible error and relies upon Henderson v. State, 403 So.2d 139 (Miss. 1981). In that case, Ricky Scott, a defense witness, was improperly asked on cross-examination by the district attorney whether he had been indicted for burglary. The witness had previously answered, "No" on direct examination to the question by his attorney, "Have you ever been convicted of a felony?" Also presented was the impropriety of the district attorney inquiring on cross-examination of co-indictee, Michael Henderson, whether the jury had convicted him for the same offense of armed robbery on which the defendant was being tried. Before an objection could be interposed, the witness answered, "Yea, because of you... ." Objections and motions for a mistrial were properly made.
In each instance, the trial judge sustained the objection but overruled the motions for a mistrial, and, in lengthy statements, admonished the jury to disregard the questions asked by the district attorney and the answers thereto. In reversing the case, the Court said:
However, when the improper conduct is compounded by the district attorney after having heard the court's admonishment to the jury on a prior occasion with reference to the same subject matter, the prejudicial effect on the jury is sometimes so great that we have no alternative but to reverse the conviction and sentence and remand the case for a new trial. In this case, the district attorney, after hearing the court's lengthy admonition to the jury to disregard his improper question with reference to Ricky Scott's indictment for the burglary of a dwelling, he thereafter, by a question, advised the jury that the appellant's co-indictee and twin brother, Michael Henderson, had been previously convicted for his participation in the same offense for which the defendant was on trial... .
* * * * * *
Under the circumstances, once the jury was apprised of the fact that Michael Henderson had previously been charged and convicted for his participation in the offense for which the appellant was being tried, the jury's verdict of guilty was such a certainty as to deny the appellant a fair trial.
403 So.2d at 141.
Cases involving the question prior to Henderson, supra, are Ivy v. State, 301 So.2d 292 (Miss. 1974), where a witness co-indictee was called by the State and shown by the State to have entered a plea of guilty to the same crime; McCray v. State, 293 So.2d 807 (Miss. 1974), where the State introduced into evidence a certified copy of the co-indictee's conviction and sentence; Buckley v. State, 223 So.2d 524 (Miss. 1969), where the co-indictee Pitts was called as a witness by the State and shown to have entered a guilty plea in order to bolster his testimony as an accomplice; Pieper v. State, 242 Miss. 49, 134 So.2d 157 (1961), where Rucker, a co-indictee was called as a witness by the State and was shown to have entered a guilty plea in the same case; and Griffin v. State, 293 So.2d 810 (Miss. 1974), where the State was allowed to show on cross-examination of one James Griffin, a co-indictee, that he had *905 been tried and convicted the preceding week and found guilty of the same murder.
We think the present case can be distinguished from Henderson and the line of cases set forth hereinabove. Counsel for appellant knew that Jackson had entered a plea of guilty and knew when they called him to the witness stand to testify for appellant that his testimony would be directly contrary to the facts stated in his plea of guilty. Although the record of the trial judge's examination of Jackson at the time of receiving the guilty plea is not a part of the record, it is common knowledge that when the lower courts in this state receive such a plea, the accused is placed under oath and a rigid examination is conducted of him to insure that the accused knew what he was doing in entering the plea, that he, in fact, committed the crime or participated in the commission of same, and that his guilt was established.
Counsel for appellant interrogated Jackson on direct examination, and Jackson stated that he and appellant were not at the scene of the crime and that they were in an automobile some distance from the scene. Further, he testified under oath:
Q. Now, I'll ask you if you or Herbert Wallace either one, if either one of y'all had anything to do with that robbery at all as far as going in the store or anything like that? Did you go in the store?
A. No, Sir.
Q. You don't know for sure who went in the store; do you?
A. No, Sir.
Q. But you know you and Herbert didn't; is that right?
A. Yes, Sir.
It is obvious that Jackson's testimony was perjured and that the district attorney inquired concerning his guilty plea in order to impeach his testimony and to reflect upon his credibility. That inquiry was in response to such testimony. In the cases cited above, the purpose of the co-indictee's testimony was for substantive evidence and to bolster the testimony of the co-indictee.
Although the questions involved in Day v. State, 382 So.2d 1071 (Miss. 1980), Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), are not the same as here, the principle is analogous to that involved in the case sub judice. In those cases, confessions were excluded on the State's direct case because of failure to give Miranda warnings. The defendants took the stand and testified in their own behalf, which testimony was contrary to the confessions given by them. Whereupon, the prosecution offered the confessions in rebuttal, and the courts ruled that, even though they were not admissible on the State's direct case, they were admissible in rebuttal to impeach the credibility of the accused. In Harris, the Court said:
Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury... . Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.
The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements.
401 U.S. at 225-226, 91 S.Ct. at 645-646, 28 L.Ed.2d at 4-5.
In Day, supra, this Court said:
This Court has applied the rule stated in Harris and Hass, supra. Booker v. State, 326 So.2d 791 (Miss. 1976), while not directly involving the request for an attorney, discussed the two United *906 States Supreme Court decisions, stated the question to be whether the confession of a defendant, inadmissible on the prosecution's case in chief, may be used to impeach the defendant's credibility when his trial testimony contradicts his prior statements. There, this Court held the defendant's statement was not admissible on the case in chief, but, being voluntary, was admissible to impeach the defendant when he made statements contradictory to the confession.
382 So.2d at 1074. See also Ivory v. State, 336 So.2d 732 (Miss. 1976).
We are of the opinion that, under the facts of this case, the questions by the district attorney were for the purpose of impeachment and attacking the credibility of the witness Jackson and that they did not constitute reversible error. The search for truth in this case requires that the testimony of Jackson be exposed for what it apparently was, viz, perjury.
With reference to the argument of the district attorney, the lower court sustained an objection to that part of the argument and instructed the jury to disregard the statement. We are of the opinion that the statement does not constitute reversible error in this case.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.