848 So.2d 880 (2002)
John S. PARISIE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01432-COA.
Court of Appeals of Mississippi.
December 17, 2002.
Rehearing Denied February 18, 2003.
Certiorari Denied June 26, 2003.
*882 John S. Parisie, pro se, appellant.
John W. Chapman, Brandon, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES and MYERS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. John Parisie was convicted in the Rankin County Circuit Court on charges of armed robbery, aggravated assault on a law enforcement officer, and possession of a firearm by a felon. He was sentenced to life imprisonment. On appeal, Parisie argues that his restricted access to a law library, numerous procedural errors regarding discovery and his indictment, and errors by the trial court regarding evidentiary matters and jury instructions denied him a fair trial. He also contends that the weight and sufficiency of the evidence do not support his conviction. We find no merit to these arguments and affirm.

FACTS
¶ 2. On November 15, 2000, John Parisie entered an auto parts store in Pearl. He walked directly to the service counter and demanded money. The employees surrendered a bank bag containing $175 as Parisie exhibited a handgun. Exiting the store, Parisie walked across the parking lot of the adjacent business to a hill where his truck was parked. The store manager noted the direction of Parisie's escape and followed him in his own truck in order to obtain Parisie's license plate number. Returning *883 to the crime scene, the manager reported this information to law enforcement.
¶ 3. Scott Walters, a deputy with the Rankin County Sheriff's Department, responded to a "be on the lookout" alert. He saw Parisie's truck and attempted to pull the suspect over. Parisie sped away. A high speed chase ensued. As Parisie attempted to execute a sharp turn into an elementary school parking lot, Walters saw him raise a gun over the seat as if to fire back at his pursuer. Walters accelerated, ramming Parisie's truck. The vehicles came to rest alongside one another after spinning from the impact. Parisie shouted obscene threats at Walters as each man attempted to draw his weapon. However, with law enforcement converging on the scene, Parisie resumed his efforts at escape, this time using the interstate highway westbound towards Jackson.
¶ 4. Police set a roadblock at an upcoming exit in order to trap Parisie, whose flight now reached speeds in excess of one-hundred miles per hour. Parisie's truck left the road approximately 500 yards short of the roadblock. Parisie jumped from his vehicle and proceeded on foot. Officers swarmed to the area. Parisie turned, crouched in a shooter's stance, and fired at Sergeant Timothy Sarrett, who had just arrived in his marked vehicle. Sarrett ducked beneath his dashboard as Parisie's bullet struck the hood just below the windshield. As Parisie fled, police gunfire erupted. Parisie was injured in the arm and leg. When he was finally subdued, Parisie muttered to Deputy Walters that he should have known better than to commit a robbery in Rankin County.
¶ 5. Parisie was tried and convicted on a variety of offenses in August 2001.

DISCUSSION

1. Access to the law library
¶ 6. In a pre-trial hearing, Parisie petitioned the lower court to allow him to represent himself. The lower court granted Parisie's request and appointed the public defender to act as an "advisor" and assist Parisie with procedure and protocol. The trial judge advised Parisie that in allowing him to proceed pro se, the court would not allow Parisie to seek the assistance of counsel once the trial had begun. In a later hearing, the trial court granted Parisie five hours weekly access to the law library to prepare his defense. This access was to be determined at the sheriff's discretion.
¶ 7. Parisie was allowed five hours of law library access during the first week, three hours the second, and approximately one hour in the library for the following two weeks. From May 9 to his trial on August 20, Parisie was denied access. The record suggests that Parisie sought enforcement of the order, and in the final pre-trial hearing, the lower court responded to Parisie's contention by stating: "Well, all I can tell you, Mr. Parisie, is I ordered it. It's up to the Sheriff to honor that order, and the order is in place, and the Sheriff told me that he considered you an escape risk, and, you know, I can'tI don't know what to do about it."
¶ 8. On appeal, Parisie contends that the lower court's order granting law library access created a reasonable expectation of such access. Parisie further argues that the lower court's refusal to allow him the option to substitute counsel mid-trial necessitated his preparing a defense, with "access to the courts," and, by extension, the law library.
¶ 9. Before trial, the State provided Parisie with case law demonstrating that law library access is not a fundamental *884 constitutional right afforded criminal defendants. Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir.1996). A prisoner is entitled either to access to the courts to prepare and file meaningful legal documents or adequate assistance from persons legally trained. Id. (citing Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). If he receives either, his rights have been upheld. Here, Parisie had the public defender as an adviser and to assist on matters that Parisie could not handle. When law library access was limited then denied, the lawyer was an alternative.
¶ 10. Parisie argues that in Degrate, the defendant accepted, then dismissed, his court-appointed counsel. By contrast, Parisie maintained self-representation throughout the course of the proceedings below. We do not find the holding in Degrate to apply only in the limited circumstance of a criminal defendant who terminates an existing relationship with appointed counsel and then acts pro se. Indeed, Degrate addresses any situation in which the prisoner "knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding." Id. This includes situations such as Parisie's, where counsel never held primary responsibility for the accused's defense.
¶ 11. The Mississippi Supreme Court has addressed the question on facts even closer to our own. Evans v. State, 725 So.2d 613 (Miss.1997). In Evans, the defendant acted pro se, with appointed counsel acting in an advisor role. Id. at 704. Over Evans' objections, the trial court denied law library access, ordering the delegation of research tasks to the attorney. Id. The court found that this appointment of counsel satisfied the Bounds requirement for meaningful access to the courts. Id.
¶ 12. As in Evans, Parisie was provided access to counsel and thereby to the courts. Even in a standby role, professional legal assistance appointed to criminal defendants provides meaningful access to those resources necessary to mount a defense. We do not find that Parisie's constitutional rights were violated.

2. Discovery
¶ 13. Parisie submits that he was denied access to information on excessive force claims against the officers involved as well as the video records from participating officers' vehicles. This allegedly denied him the opportunity to put forward his theory of the casethat law enforcement unlawfully fired upon him without threat or provocation, and that he was never in possession of a weapon. He argued that the gun found near his side at his arrest was "planted" by one of the deputies. Under this theory, Parisie contends, he could not be guilty of any of the charges against him.
¶ 14. The process due a criminal defendant is blocked if the State suppresses, either knowingly or inadvertently, evidence favorable and material to the defendant's guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, Parisie paints with too broad a brush. The Supreme Court has refined the Brady requirements. Most notably, the Court adopted a materiality standard for Brady violations. United States v. Agurs, 427 U.S. 97, 114, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Accordingly, no Brady violation exists where the evidence in question would not raise a reasonable doubt about guilt under the circumstances. Id. In addition, a defendant's Brady rights cannot be violated unless the omission of evidence creates a "reasonable probability" of changing that case's outcome. Holland v. State, 705 So.2d 307, 331 (Miss.1997) (citing United States v. Bagley, 473 U.S. 667, *885 684, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).
¶ 15. As to the records of excessive force by the officers involved, the prosecution stated that it had no such information. Even had such existed, we find no benefit that Parisie would have gained from it at trial. He was convicted for armed robbery, aggravated assault on a police officer, and possession of a firearm. Parisie's factual argument is that even though the evidence is undisputed that he had at extraordinary speed attempted to elude those who chased him after an armed robbery, though he was finally forced to leave his vehicle and, as some testimony showed, though he then fired on the officers, that excessive force by an officer would have justified his firing at them without criminal liability. We do not find that a history of excessive force by an officer would have deflected the charges against Parisie. He did not argue that he was trying to surrender and the officers fired anyway, or in other respects a right of self defense arose during or immediately after the chase because of conduct by the officers. Therefore, the failure of the State to provide Parisie with information is not violative of his Brady rights.
¶ 16. Similarly, we find Parisie's argument to be unpersuasive that the police video would likely demonstrate the bad acts of his pursuers. Parisie was entitled to any exculpatory evidence tending to support his defense. Todd v. State, 806 So.2d 1086, 1091 (Miss.2001). He was allowed to view one police video of the event.
¶ 17. A four-part test assists in determining whether Brady violations have occurred.
a. that the State possessed evidence favorable to the defendant (including impeachment evidence); b. that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; c. that the prosecution suppressed the favorable evidence; and d. that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Todd, 806 So.2d at 1092. Applying this test, we cannot find that Parisie's claims constitute infringements on his fundamental rights under Brady.
¶ 18. The only other significant claim concerned news coverage. Parisie sought film from area news stations which might have justified a change of venue. The court granted Parisie's request, but ensuing confusion about who would prepare the subpoenas for the pro se defendant resulted in their late issuance, four days before trial. Parisie argues that by that time, it was too late to submit a motion to change venue. We agree, but we note that Parisie was not prohibited from filing his motion earlier. Parisie was continually warned that trial preparation would encounter extra hurdles without an attorney. Parisie shoulders the responsibility for any failure to obtain a change of venue.
¶ 19. These discovery issues did not implicate Parisie's rights. We find them insufficient to overturn the jury's verdict.

3. Indictment
¶ 20. Parisie offers several challenges based on his indictment. We will consider each claim.
¶ 21. Parisie submits that the counts of the indictment failed to track the statutory language, and are therefore fatally defective.
It is not essential, in an indictment for a statutory crime, that the exact descriptive language of the statute be used. Equivalent words of substantially the *886 same meaning as those of the statute may be substituted. Where the language used in the indictment is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevent its application to other acts, it is sufficient.
Modern v. State, 794 So.2d 200, 212 (Miss. 2001). What remains of Parisie's argument is whether the actual elements of the offenses charged, which are required in the indictment, were improperly omitted. Hennington v. State, 702 So.2d 403, 407 (Miss.1997).
¶ 22. In Count I of the indictment, the armed robbery charge, Parisie notes the absence of the words "deadly weapon," the language set out in Miss. Code Ann. § 97-3-79 (Rev.2000). Count I did state that Parisie had used a handgun. We find this an adequate substitute for the phrase "deadly weapon." The essential statutory elements were satisfied in Count I.
¶ 23. Similarly, Parisie challenges the failure of Count III of the indictment to mirror the statute:
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....
Miss.Code Ann. § 97-3-7(2) (Rev.2000). Count III states that Parisie "did unlawfully, feloniously, purposely and knowingly, cause or attempt to cause serious bodily injury to Officer Tim Sarrett shooting a handgun at the said Officer Sarrett...." Parisie argues that this fails to track either the reckless indifference language of subsection (a) or the deadly weapon language of subpart (b). We have previously addressed the deadly weapon claim above, noting the sufficiency of "handgun" for purposes of Parisie's indictment. We further point out that section 97-3-7(2)(a) is written in the disjunctive; either an accused acted purposely and knowingly or he acted recklessly with indifference to the value of human life. By failing to include the recklessness language in the indictment, the State did not err. It was, however, limiting itself to proving that Parisie had acted purposefully as opposed to recklessly. The State then proved such intent, inferentially.
¶ 24. Parisie builds on his previous arguments by attacking the jury instructions offered by the trial court. Parisie suggests that the judge, by instructing the jury with reference to a "deadly weapon," impermissibly amended the indictment to include previously "missing" elements. We have already stated that since a handgun is a deadly weapon, the references are interchangeable.
¶ 25. Parisie's final contention regarding his indictment is that the lower court's failure to try him during the term in which the indictment was returned justifies dismissal of it. Parisie relies on pre 1976 statutory language and case law which held that "capital" cases must be tried during the term in which the indictment is shown, absent good cause. Miss. Code Ann. § 2518 (1942); King v. State, 251 Miss. 161, 168 So.2d 637 (1964). This has been superseded by a statute requiring that trial be held within 270 days. Miss.Code Ann. § 99-17-1 (Rev.2000). No argument that the trial violated this statute was made.

4. Continuance
¶ 26. Parisie claims that the lower court erred in denying him a continuance. *887 He reincorporates his earlier arguments, particularly as to law library access and discovery. We have addressed those issues in full. Granting or denying a continuance is within the sound discretion of the trial court. Wilson v. State, 716 So.2d 1096, 1097 (Miss.1998). We cannot find that the trial court abused its discretion here.

5. Evidence
¶ 27. Parisie argues that his gun was improperly admitted into evidence. The record reflects that when the State offered the gun into evidence, the lower court encouraged Parisie to object. Parisie initially declined to do so, and the judge ordered the evidence admitted. As the exhibit was marked, Parisie apparently rethought his position and interposed an objection. Generally, the failure to object contemporaneously serves to waive a defendant's right to raise the issue on appeal. Smith v. State, 797 So.2d 854, 856 (Miss. 2001). However, Parisie objected before the evidence was presented to the jury or commented on by a witness. We consider the issue.
¶ 28. Parisie's claim of inadmissibility concerned the "chain of custody" of the gun. The trial court responded by stating, "I think this officer has testified that he retrieved it at the scene, and it's the weapon that he retrieved. And it's been in the custody of Pearl P.D. since then. So I'm going to overrule your objection." Admissibility of evidence is entrusted to the discretion of the lower court. Spann v. State, 771 So.2d 883, 893 (Miss. 2000). When reviewing questions of the chain of custody, the focus should be whether there is any positive indication of tampering with or substitution of the evidence. Id. at 894. The trial court implicitly found no such indication.
¶ 29. On appeal, Parisie describes discrepancies purportedly based on the failure of the chain of custody. Indeed, he sets forth rather succinctly the chain, from the gun's recovery by Deputy Walters through its testing at the Mississippi Crime Lab. Of particular interest to Parisie is his inability to question two of the custodians: Officer Weibe, who was given the gun by Chief Slade until Investigator Seal arrived at the crime scene, and Betty Dedeaux, a crime lab technician who handled the evidence at one point in the investigation.
¶ 30. Regardless of these individuals not being made available, the record indicates sufficient evidence to justify the lower court in allowing the evidence. There was no suggestion that the handgun offered into evidence at trial had been substituted or tampered with in any way.

6. Jury instruction
¶ 31. Parisie submits that the lower court erred in allowing a "flight instruction" to the jury.
¶ 32. A flight instruction is proper where "the defendant's flight (1) is unexplained and (2) where the circumstance of that flight has considerable probative value." Austin v. State, 784 So.2d 186, 194 (Miss.2001). Here, the trial court found such an instruction was appropriate. Parisie suggests that his testimony would have advanced an alternative sufficient to explain his flight. That was certainly his prerogative, one he chose not to exercise during trial. We find that the trial court properly applied the threshold test in allowing the flight instruction. This argument holds no merit.

7. Weight and sufficiency of the evidence
¶ 33. Finally, Parisie contends that the trial court erred in denying his *888 motion for a directed verdict and that the jury's verdict was against the overwhelming weight of the evidence.
¶ 34. A motion for a directed verdict as well as a motion for a judgment notwithstanding the verdict, challenges the evidence's sufficiency. Franklin v. State, 676 So.2d 287, 288 (Miss.1996). In reviewing the challenge, the court must consider all evidence in a light favorable to the State, discarding all evidence favoring the defendant. Taylor v. State, 656 So.2d 104, 107 (Miss.1995). We may reverse the lower court only if, after reviewing the evidence in this way, we are convinced that no reasonable, hypothetical juror would find guilt. Tait v. State, 669 So.2d 85, 88 (Miss. 1996). We find it eminently reasonable for the jury to find guilt.
¶ 35. As to Parisie's request for a new trial, we will affirm the lower court's order denying it unless the overwhelming weight of the evidence renders the verdict an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Here the evidence was substantial and persuasive. The trial court was well within its authority in denying Parisie a new trial.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF COUNT I: ARMED ROBBERY, COUNT III: AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND COUNT IV: POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE CONSECUTIVE LIFE SENTENCES WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.