881 So.2d 919 (2004)
Terry Lamar STEWART, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01847-COA.
Court of Appeals of Mississippi.
June 15, 2004.
Rehearing Denied September 7, 2004.
*920 Ross Parker Simons, attorney for appellant.
Office of the Attorney General, by Scott Stuart, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. Terry Lamar Stewart was convicted in the Circuit Court of Jackson County of capital murder and sentenced to life in prison without parole. Aggrieved by his conviction and sentence, Stewart appeals to this Court and raises the following five issues.

ISSUES PRESENTED
I. Were Stewart's due process rights violated by the three-year delay from the time of his arrest until his trial?
II. Did the trial court commit reversible error by denying Stewart's motion *921 to suppress statements made to the police?
III. Did the trial court commit reversible error by allowing Stewart to be tried and convicted by an unsworn jury?
IV. Did the trial court err by refusing to allow Simeon Dykes to testify regarding his plea bargain of manslaughter?
V. Was the evidence presented sufficient to convict Stewart of capital murder?

STATEMENT OF FACTS
¶ 2. The record reflects that during the evening hours of Friday, July 8, 1998, Stewart along with a friend, Simeon Dykes, met Ralph Clayton Bourg, who was later the victim, at a bar in Pascagoula, Mississippi, called Third and Short. The men left Third and Short and went to another bar called Thunders. Stewart was not allowed inside Thunders because he did not have identification. Dykes and Bourg proceeded inside Thunders to continue drinking. After several hours passed, Dykes and Bourg left Thunders after they purchased some beer to take with them. They picked up Stewart and went out to The Point, a secluded location on the beach of the Mississippi Gulf Coast in Pascagoula. Dykes and Bourg began to fight and punch each other. Stewart jumped on Bourg and began stabbing him with a knife. Stewart and Dykes left Bourg at The Point after Dykes stole his wallet. Bourg's body was found at The Point by a man running along the beach the following morning. Bourg had been stabbed several times in his neck and chest area. Bourg's empty wallet was discovered inside Dykes' car.
¶ 3. Dykes and Stewart were jointly indicted for capital murder in violation of Mississippi Code Annotated Section 97-3-19(2)(e) (Rev.2000). Dykes pled guilty to the lesser offense of manslaughter. Stewart was convicted of capital murder and sentenced to life without parole. Stewart's motion for a new trial, or in the alternative a JNOV, was denied by the trial court. From that order, Stewart now appeals to this Court.

ISSUES PRESENTED
I. WERE STEWART'S DUE PROCESS RIGHTS VIOLATED BY THE THREE YEAR DELAY FROM THE TIME OF HIS ARREST UNTIL HIS TRIAL?
¶ 4. Stewart claims that his fundamental due process rights were violated by the three-year delay from the time of his arrest until his trial. Stewart was arrested on July 11, 1998, indicted on September 22, 1998, and his trial began on August 8, 2001. He specifically states that he is not raising the Sixth Amendment right to a speedy trial argument on appeal but that he was denied due process because of the delay. Since Stewart does not raise the Sixth Amendment argument, we will not discuss the merits of that claim.
¶ 5. The record reflects that Stewart's trial was continued seven times with three continuances being agreed to by both the State and the defense. The other four were requested by Stewart's trial counsel. Since Stewart has asserted that his claim is not a denial of a speedy trial but a denial of due process, he limits the issue to pre-indictment delay. The case of De La Beckwith v. State, 707 So.2d 547, 569 (¶ 77) (Miss.1997), provides the analysis when a defendant claims a due process violation because of delay. To sustain a claim that a due process violation has occurred, the defendant must prove: (1) that the pre-indictment delay caused actual prejudice and (2) the delay was an intentional device by the government to obtain a tactical advantage over the defendant. *922 Id. Stewart's claim does not fit the description of De La Beckwith because his claim does not involve a pre-indictment delay. Stewart complains of the three-year delay after his arrest and indictment but before his trial. Therefore, the analysis of De La Beckwith and its progeny is inapplicable to Stewart's claim.
¶ 6. Stewart also argues that his access to the courts was limited because he could not object to the seven continuances made on his claim. Stewart also claims that he was denied an opportunity to call a hearing on his two motions for relief due to the delay of his trial. A prisoner is entitled to either access to the courts to prepare and file legal documents or adequate assistance from persons legally trained to do so. Parisie v. State, 848 So.2d 880, 884(¶ 9) (Miss.Ct.App.2002). If he receives either his rights have been protected. Id. Stewart's claim of denial of access to courts is without merit because he was appointed counsel to represent him. The record also indicates that Stewart filed several pre-trial motions on his own behalf. Stewart was not denied access to the court. This issue is without merit.

II. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY DENYING STEWART'S MOTION TO SUPPRESS STATEMENTS MADE TO THE POLICE?
¶ 7. Stewart asserts that the trial court erred by denying his motion to suppress statements he made to the police following his arrest. Stewart claims that the statements should have been excluded because he was denied his right to an initial appearance within forty-eight hours of arrest as provided by Rule 6.03 of the Uniform Rules of Circuit and County Court.
¶ 8. When this Court reviews a trial court's ruling on a suppression hearing, we must determine whether the trial court's finding is supported by substantial evidence considering the totality of the circumstances. Reid v. State, 825 So.2d 701, 702(¶ 5) (Miss.Ct.App.2002). The admissibility of evidence lies within the trial court's discretion and will only be reversed if this discretion is abused. Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000). "The discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence." Reid, 825 So.2d at 702(¶ 5) (quoting Johnston v. State, 567 So.2d 237, 238 (Miss.1990)).
¶ 9. Stewart was arrested at approximately 4:00 a.m. on July 11, 1998 and was given Miranda warnings about thirty minutes later. The record reflects that Stewart signed a Miranda waiver form at 4:28 a.m. on July 11, 1998. After Stewart signed the form, he gave a statement to police. At no time did Stewart ask for an attorney or invoke his right to remain silent. Three days later, Stewart initiated a conversation with the police regarding the killing of Bourg. Stewart told the police that he needed to clear up some things he said during the first statement. Stewart signed another Miranda waiver form before he spoke to police. During this statement, Stewart mentions that Dykes said he was "gonna roll this guy [Bourg]." Stewart also recalled that Dykes took Bourg's wallet. During the suppression hearing, the trial judge found beyond a reasonable doubt that Stewart was given his Miranda warnings and freely, voluntarily and intelligently gave the first statement. The trial judge found that Stewart initiated the second conversation with police, was given Miranda warnings and freely, knowingly, intelligently and voluntarily made the second statement.
¶ 10. Uniform Circuit and County Court Rule 6.03 states the following in pertinent part: "Every person in custody *923 shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance." Stewart claims that his statements should have been suppressed because he was not given an initial appearance until July 15, 1998. Stewart relies on the case of Abram v. State, 606 So.2d 1015 (Miss.1992), to support his argument. In Abram, the court held the "failure to provide the initial appearance reversible since, as a consequence, Abram gave a confession in the absence of, and in violation of, his right to counsel. Such an error could hardly be deemed harmless, since the conviction of Abram for capital murder was based entirely on his confession." Abram, 606 So.2d at 1029.
¶ 11. However, two subsequent cases limit the applicability of Abram to Stewart's claim. The supreme court recently held that a Rule 6.03 violation does not automatically create a Fourth Amendment violation. Lawrence v. State, 869 So.2d 353 (¶ 12) (Miss.2003). Also, in Jones v. State, 841 So.2d 115, 132 (¶ 47) (Miss.2003), the court held:
It is well established that the failure to provide an initial appearance for an accused within the time provided is not, of itself, a reason to suppress a confession.... [T]his Court found that a violation of Rule 6.03 alone will not result in the suppression of evidence or reversible error where the defendant was informed of his rights and made a knowing and voluntary waiver.
¶ 12. Stewart's reliance on Abram is misplaced because Abram did not sign a waiver form and Stewart did. Also, the court in Abram based its decision to reverse the conviction on the fact that Abram's conviction was based solely on his incriminating statement. Stewart was informed of his rights to remain silent and to representation when he was given Miranda warnings prior to his statements to police. Stewart signed two waiver forms stating that he understood his rights and did not wish to assert them. In accordance with Jones, the trial court did not commit reversible error by admitting Stewart's statements.

III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING STEWART TO BE TRIED AND CONVICTED BY AN UNSWORN JURY?
¶ 13. Stewart asserts that his conviction should be reversed because he was tried and convicted of capital murder by an unsworn jury. Stewart argues that the jurors in his case should have been sworn according to Mississippi Code Annotated Section 13-5-71 (Rev.2002), the petit juror oath, and Section 13-5-73 (Rev.2002), the jurors' oath for capital murder cases. A review of the record does not reveal that an oath was given to the jury; however, the sentencing order states that the jury was duly sworn. In Bell v. State, 360 So.2d 1206, 1215 (Miss.1978), the supreme court found no reversible error where the record did not reflect that the jury was specially sworn. The court held, in such a situation, there exists a rebuttable presumption that the trial judge properly performed his duties. Id. Also, when the judgment states that the jury was properly sworn it is presumed that the trial judge performed his duties. Woulard v. State, 832 So.2d 561, 567 (¶ 24) (Miss.Ct.App.2002). The failure of the court to specifically swear the jury in a capital case is waived where no objection is made by the defendant until the verdict is rendered. This issue cannot be raised for the first time on appeal. McMillan v. State, 191 Miss. 59, 61, 2 So.2d 823, 824 (1941) (citing Hill v. State, 112 Miss. 375, 383, 73 So. 66, 67 (1916)).
*924 ¶ 14. Stewart did not object to the issue of the unsworn jury until his trial was completed and a verdict was rendered. Therefore, Stewart has procedurally waived his claim. His claim also fails on the merits because the sentencing order clearly states that the jury was duly sworn. Stewart did not present sufficient evidence to overcome the presumption that the trial judge properly performed his duties.

IV. DID THE TRIAL COURT ERR BY REFUSING TO ALLOW SIMEON DYKES TO TESTIFY REGARDING HIS PLEA BARGAIN OF MANSLAUGHTER?
¶ 15. Stewart asserts that the trial court erred by refusing to allow his co-indictee, Simeon Dykes, to offer testimony regarding his plea bargain of manslaughter. Dykes and Stewart were jointly indicted for capital murder based upon the killing of Bourg in the commission of a robbery. Dykes pled guilty to the lesser offense of manslaughter while Stewart went to trial on the capital murder charge. At trial, Stewart called Simeon Dykes as a defense witness. Stewart wished to ask Dykes questions regarding his guilty plea to manslaughter as a means of proving that Stewart was also guilty of manslaughter, not capital murder. The State objected to Dykes testifying about his guilty plea and sentence on direct examination. After considering arguments from both sides, the trial judge ruled that Dykes could not testify about his guilty plea and sentence during Stewart's case-in-chief.
¶ 16. The record reflects that Dykes was allowed to testify about the events that took place on the night Bourg was killed. He told the jury that Stewart stabbed Bourg and that he took Bourg's wallet. The jury heard evidence on Stewart's theory of the case and defense. On appeal, Stewart is contesting only the exclusion of evidence regarding Dykes's guilty plea to manslaughter.
¶ 17. The admissibility of evidence is within the sound discretion of the trial judge. Crawford, 754 So.2d at 1215(¶ 7). The decision to admit or exclude evidence will not be reversed absent abuse of discretion. Id. The trial judge ruled that according to Stewart v. State, 662 So.2d 552 (Miss.1995), the testimony about the guilty plea was inadmissible on direct examination by Stewart. "Federal and state appellate courts have found the admission of a co-conspirator's plea of guilty, while incompetent as substantive evidence of the defendant's guilt, may be admissible for other purposes." Clemons v. State, 732 So.2d 883, 890 (¶ 30) (Miss.1999) (quoting United States v. Medley, 913 F.2d 1248, 1257-58 (7th Cir.1990)). In Wallace v. State, 466 So.2d 900, (1985), our state supreme court held that the State's questioning of a defense witness about a prior guilty plea was not reversible error because the plea was used in rebuttal to impeach the credibility of the witness and not as substantive evidence for the defendant. It is Stewart's purpose for offering the plea that determines its admissibility.
¶ 18. This was not a situation where Dykes was called as a State's witness and Stewart sought to use the guilty plea as a method of impeachment during cross-examination. Nor is it a situation similar to Wallace where Dykes was called by Stewart and the State introduced the plea as impeachment evidence. In either of those situations, the guilty plea would be admissible as relevant evidence which might affect Dykes' credibility in the eyes of the jury. Stewart, 662 So.2d at 563. Here, Stewart wanted to take advantage of Dykes' plea to a lesser charge of manslaughter and use it as substantive evidence that he did not commit capital murder. The use of Dykes's plea for this *925 purpose was improper and the trial court did not commit error by excluding such testimony.

V. WAS THE EVIDENCE PRESENTED SUFFICIENT TO CONVICT STEWART OF CAPITAL MURDER?
¶ 19. Our standard of review regarding challenges to convictions based on the sufficiency of the evidence is well-settled. The Mississippi Supreme Court has stated:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury.
Muscolino v. State, 803 So.2d 1240, 1242 (¶ 10) (Miss.Ct.App.2002) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). We reverse a conviction when the evidence, as to an element of a crime, is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶ 20. Stewart argues on appeal that the evidence presented at trial was not sufficient to support a guilty verdict for capital murder. Specifically, Stewart contends that there was no evidence that Bourg was killed in the commission of a robbery by him. Stewart was convicted of violating section 97-3-19(2)(e) (Rev.2000) of the Mississippi Code which states:
(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies.
Robbery is defined by statute as: "Every person who shall feloniously take the personal property of another in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Miss.Code Ann. § 97-3-73 (Rev.2000).
¶ 21. The record reveals that the jury members heard that Stewart and Dykes met Bourg at a bar called Third and Short. Bourg was bragging about having lots of money and was buying expensive drinks. The men left Third and Short and went to another bar called Thunders to continue drinking. Stewart was not allowed into Thunders because he had lost his identification. Dykes and Bourg proceeded into Thunders. After many hours of drinking, Dykes and Bourg left the bar after buying two six-packs of beers to take with them. They picked up Stewart who had been at Dykes' house where he was living at the time. The three men went to a secluded area of the beach called The Point. As they got out of the car, Dykes said to Stewart, "I'm gonna roll this guy [Bourg]." Dykes and Bourg got into an argument which caused Dykes to punch Bourg several times in the head. Stewart, who had a knife in his possession, starting kicking Bourg and stabbing him. Dykes admitted that he stole Bourg's wallet. Stewart and Dykes left Bourg at The Point with six stab wounds which were fatal. Stewart threw the knife used to stab Bourg out the window of Dykes' car into the water.
¶ 22. Stewart claims that there was insufficient evidence that he participated in *926 the robbery of Bourg and therefore he cannot be guilty of capital murder. Stewart's argument hinges on the fact that Dykes actually took the wallet. The jury heard testimony that when Dykes and Stewart got into Dykes' car, Stewart said to Dykes, "I got him good. The blade went all the way through. He's not so tough now." Stewart searched through Bourg's wallet looking for money. No money was found in the wallet, but the men tried to hide the wallet in a sock in Dykes' car. When reviewing the evidence in the light consistent with the verdict and giving the State all favorable inferences which may be drawn from the evidence, this Court finds that a reasonable juror would find Stewart guilty. This issue is without merit and we affirm the conviction and sentence of the trial court.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.