# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01353-SCT

*ERIC RAMONE SHARKEY a/k/a ERIC SHARKEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2017 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | MATTHEW DRAKE BURRELL |
| | JIM L. DAVIS, III |
| COURT FROM WHICH APPEALED: | STONE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/28/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Eric Sharkey was found guilty of two counts of armed robbery and one count of possession of a firearm by a convicted felon and received three sentences—fifteen years for each armed robbery and ten years for possession, all to run concurrently. Sharkey appeals his convictions and sentences. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Eric Sharkey, Madison Magee, and Marvin Bolden were indicted on two counts of armed robbery and possession of a firearm by a convicted felon. The State moved to amend Sharkey's indictment to reflect his status as a habitual offender.[1] No argument was raised in opposition. The trial court found Sharkey to be a habitual offender under Mississippi Code Section 99-19-81 (Rev. 2014). The State also was allowed to exclude the specific sentences of Sharkey's codefendants, both of whom had entered a guilty plea to the same crime.[2]

¶3.     During Sharkey's trial, Don Patterson, Woodrow Berry, Bolden, and Magee gave essentially the same account of the facts. Berry was visiting Patterson when both men were robbed by Sharkey, Bolden, and Magee. Bolden came in Patterson's home and asked for beer, cigarettes, and change for a $100 bill. Patterson told him that he did not have change. Magee then entered Patterson's home with a gun and ordered Patterson and Berry to lie face down on the floor. When Sharkey came inside, Magee told him to check the back bedrooms. Sharkey attempted to remove a television from one of the back bedrooms, but it fell. When Sharkey came back into the living room, Patterson noticed that Sharkey had Patterson's pistol. Magee then told Sharkey to get the television from the living room. Sharkey took the television outside and then came back into the house. As Magee began looking for drugs, Sharkey told Magee to hurry up and to get out of the house. Magee took Patterson's watch,

---

[1] Sharkey was previously convicted of uttering a forgery, two counts of possession of a controlled substance, and burglary.

[2] Magee was sentenced as a habitual offender to a term of twelve years, and Bolden was sentenced to a term of ten years.

ring, wallet, and Berry's money. Patterson testified that, aside from those items and the television, a gun, whiskey, and medicine were also taken.

¶4.     Patterson testified that Sharkey was the only person who entered his bedroom, where his pistol was located. Patterson and Berry testified that the three men were all working together. Both men testified that Sharkey had tattoos on his neck and face.

¶5.     Kevin Hinds, a patrol lieutenant for the Stone County Sheriff's Department, testified that he responded to a call regarding an armed robbery. Hinds identified Sharkey as one of the men he had arrested for the armed robbery.

¶6.     Captain Ray Boggs with the Stone County Sheriff's Office testified that he spoke with Patterson, who informed him that Patterson and Berry had been robbed at gunpoint. Patterson knew Bolden by name and was able to give a description of the other men. Once Boggs got to the scene of the arrest, he noticed a light-skinned, African-American male with tattoos on his face in the front passenger seat. Boggs, both at the scene and at trial, identified the passenger as Sharkey.

¶7.     Boggs searched the vehicle and found a "Hi-Point 40 caliber pistol tucked in the [front passenger] seat." He also found a silver .380 pistol tucked between the front seats. In addition to the weapons, Boggs found bottles of medication prescribed to Patterson, a television, a watch, a diamond ring, and money. Boggs testified that Patterson came to the sheriff's office and identified his recovered items, including the .40 caliber pistol. Boggs showed Patterson and Berry photographic lineups, and both were able to identify Sharkey as one of the men who had robbed them.

3

¶8.     Immediately before the State rested, the trial court read an agreed stipulation to the jury that Sharkey previously had been convicted of the felony uttering a forgery. Sharkey moved for a directed verdict on all three counts; his motion was overruled. Sharkey elected not to testify in his defense, and no other witnesses were called.

¶9.     The jury was instructed and found Sharkey guilty of all three counts. Sharkey was found to be a habitual offender and was sentenced to a term of fifteen years for Count I, fifteen years for Count II, and ten years for Count III, to run concurrently. Sharkey's motions for a new trial or, alternatively, a judgment notwithstanding the verdict were denied.

## STATEMENT OF THE ISSUES

¶10.    On appeal, Sharkey raises the following issues:

I.      **WHETHER THE VENIRE WAS TAINTED, RENDERING SHARKEY'S TRIAL UNFAIR.**

II.     **WHETHER THE PROSECUTION'S GIVING NONVERBAL SIGNALS TO A STATE'S WITNESS DURING THAT WITNESS'S TESTIMONY WAS IMPROPER.**

III.    **WHETHER THE TRIAL COURT ERRED IN REFUSING A DURESS JURY INSTRUCTION.**

IV.     **WHETHER THE TRIAL COURT ERRED IN REFUSING LESSER-INCLUDED-OFFENSE INSTRUCTIONS FOR ROBBERY OR LARCENY.**

## ANALYSIS

I.      **WHETHER THE VENIRE WAS TAINTED, RENDERING SHARKEY'S TRIAL UNFAIR.**

¶11.    Sharkey argues that the trial court erred in denying his motion for mistrial. He urges that he is entitled to a new trial, because during voir dire the jurors were informed that

4

witnesses Bolden and Magee had been indicted, had pled guilty, and were serving time for the same crime for which Sharkey was on trial. One venire member responded that he would have "a little trouble getting over the statement about the other two being convicted. . . ." The State interrupted and asked to approach the bench. During the bench conference, the venire member indicated that he had already formed an opinion about Sharkey's guilt. He was struck for cause.

¶12.     Sharkey moved for a mistrial. In opposing the motion, the State argued that (1) the statement was made during voir dire and was not evidence, (2) a guilty plea was less prejudicial than a conviction by a jury, and (3) the State anticipated calling both men to testify.  The State informed the court that it would not ask either witness about their guilty pleas unless Sharkey inquired about them on cross-examination.

¶13.     The trial court found that the State should not have mentioned the guilty pleas in voir dire and directed the State not to reference the pleas during examination. The trial court denied the motion for mistrial. Sharkey did not question either Bolden or Magee about their guilty pleas, and the State did not mention the pleas during their testimony.

¶14.     This Court employs an abuse-of-discretion standard of review to determine whether a trial judge erred in denying a request for a mistrial. *Pitchford v. State*, 45 So. 3d 216, 240 (Miss. 2010). A trial judge need declare a mistrial only "when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Id.* (quoting *Parks v. State*, 930 So. 2d 383, 386 (Miss. 2006)). Likewise, the standard of review for a post-trial motion is abuse of discretion. *Young v. State*, 236 So. 3d 49, 55 (Miss. 2017).

"This Court will not order a new trial unless it is convinced that the verdict so contradicts the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice." *Id.* (citing *McNeal v. State*, 617 So. 2d 999, 1009 (Miss. 1993)). The jury's verdict was supported by the overwhelming evidence adduced at trial.

¶15.    We find no abuse of discretion in the trial court's denial of the motion for mistrial. The statement was made during voir dire, and the only juror who told the court that he could not be impartial in light of the two accomplices' convictions was excused for cause. When Magee and Bolden were called as witnesses, their pleas and sentences were not discussed. Sharkey failed to present evidence that he had suffered substantial or irreparable prejudice.

## II.    WHETHER THE PROSECUTION'S GIVING NONVERBAL SIGNALS TO A STATE'S WITNESS DURING THAT WITNESS'S TESTIMONY WAS IMPROPER.

¶16.    Sharkey claims that the prosecutor erred by giving a nonverbal cue to a witness during the witness's testimony. During direct examination of Patterson by the State, the following exchange occurred:

Q.    Could you see anything on the defendant that stood out to you?

A.    No.

Q.    How were you able – was there any distinctive markings on him?

A.    The tattoos.

MR. DAVIS: Objection to the State leading by making facial – to get testimony out of the witness, Your Honor.

THE COURT: That's overruled. Go ahead.

BY MR. BURRELL:

6

Q. What did you see on the defendant that stood out to you?

A. The tattoos.

¶17. Sharkey relies on *Williams v. State*, 539 So. 2d 1049 (Miss. 1989), for the proposition that "[a]n attorney should never signal to a witness, regardless of how innocent the action may be, because this leaves with the jury the impression of covertness and partiality between the witness and the signalling party." *Williams*, 539 So. 2d at 1053. In *Williams*, the record was clear that the prosecutor admittedly made a hand gesture, signaling his witness to "go ahead and now give the information that the Court had previously ruled as inadmissible. . . ." *Id.* at 1052.

¶18. Today's case is distinguishable, because the record does not reflect that the prosecutor gave any hand signals to the witness in front of the jury. We find that the trial court did not abuse its discretion in overruling Sharkey's objection.

### III. WHETHER THE TRIAL COURT ERRED IN REFUSING A DURESS JURY INSTRUCTION.

¶19. The standard of review for issues involving jury instructions is well-established. Jury instructions must be read as a whole to determine if the instructions were proper. *Milano v. State*, 790 So. 2d 179, 184 (Miss. 2001). Jury instructions must fairly announce the law of the case and not create an injustice against the defendant. *Id.* This rule is summed up as follows: "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id. See Adams v. State*, 772 So. 2d 1010, 1016 (Miss. 2000). *See also Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009).

¶20. Sharkey offered a proposed jury instruction on his affirmative defense of duress.

7

Sharkey contends that he did not willingly agree to participate in the robbery and complied with Magee's commands out of fear of being shot. Sharkey submits that duress was a theory of his defense; therefore, he was entitled to proposed jury instruction D-18. In denying the instruction, the trial court noted that no evidence was offered that Sharkey was afraid of Magee.

¶21.    While a defendant has a right to jury instructions that present his theory of the case, that right is not absolute. *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009). Jury instructions are within the discretion of the trial court. *Id.* The trial court may refuse an instruction if it is without foundation in the evidence. *Id.* In *Banyard v. State*, this Court adopted the following four-part test for duress:

> (1) the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that he had not recklessly or negligently placed himself in the situation; (3) that he had no reasonable legal alternative to violating the law; (4) that a direct causal relationship may be reasonably anticipated between the criminal action and the avoidance of harm.

*Banyard*, 47 So. 3d 676, 682 (Miss. 2010).

¶22.    While Sharkey's attorney suggested in his opening statement and closing argument that Sharkey was in fear of Magee and committed the robbery under duress, no evidence was offered to support that suggestion. Sharkey failed to offer any evidence that he was threatened in any way while he was committing the crime. Because Sharkey failed to introduce evidence to support a defense of duress, he was not entitled to a jury instruction on duress.

8

**IV. WHETHER THE TRIAL COURT ERRED IN REFUSING LESSER-INCLUDED-OFFENSE INSTRUCTIONS FOR ROBBERY OR LARCENY.**

¶23. Sharkey argues that the trial court erred in denying his proposed jury instructions on simple robbery and petit larceny. Sharkey contends that he did not know a robbery was going to occur and that he did not actively join in the robbery. Sharkey argues that he is entitled to a new trial because the jury was not allowed to consider the lesser-included offenses.

¶24. With regard to Sharkey's claim that he was entitled to a lesser-included-offense instruction, this Court conducts a *de novo* review, because this is a question of law. ***Downs v. State***, 962 So. 2d 1255, 1258 (Miss. 2007) (citing ***State v. Shaw***, 880 So. 2d 296, 298 (Miss. 2004)). "To be entitled to a lesser-included-offense instruction, '. . . the defendant must point to evidence in the record from which a jury reasonably could find the defendant not guilty of the crime with which the defendant is charged and at the same time find the defendant guilty of the 'lesser offense.'''" ***Thomas v. State***, 48 So. 3d 460, 472 (Miss. 2010) (quoting ***Brazzle v. State***, 13 So. 3d 810, 815-16 (Miss. 2009)). "[T]his Court has repeatedly held that a lesser-included offense instruction should not be indiscriminately granted, but rather should be submitted to the jury only where there is an evidentiary basis in the record." ***McCune v. State***, 989 So. 2d 310, 318 (Miss. 2008) (quoting ***Strickland v. State***, 980 So. 2d 908, 922 (Miss. 2008)). A lesser-included-offense instruction may not "be based purely on speculation or surmise." ***Wilson v. State***, 639 So. 2d 1326, 1329 (Miss. 1994).

¶25. The crime of armed robbery is codified at Mississippi Code Section 97-3-79, which provides, in pertinent part,

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery. . .

Miss. Code Ann. § 97-3-79 (Rev. 2014). This Court has identified the following essential elements of armed robbery: "(1) a felonious taking or attempt to take, (2) from the person or from the presence, (3) the personal property of another, (4) against his will, (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." *Wales v. State*, 73 So. 3d 1113, 1122 (Miss. 2011). Simple robbery does not require the "exhibition of a deadly weapon." *See* Miss. Code Ann. § 97-3-73 (Rev. 2014). "If any person shall feloniously take, steal and carry away any personal property of another under the value of One Thousand Dollars ($1,000.00), he shall be guilty of petit larceny. . . ." Miss. Code Ann. § 97-17-43 (Rev. 2014).

¶26.    The jury was instructed on robbery with a deadly weapon. Sharkey contends that the trial court erred in refusing to give jury instructions D-10 and D-12 on the lesser-included offense of simple robbery, an offense that does not require the exhibition of a deadly weapon. *See* Miss. Code Ann. § 97-3-73. Sharkey argues that he did not know a robbery was going to occur and points to testimony that the robbery was not discussed in the car before reaching Patterson's home. However, even if the robbery was not discussed, Sharkey still actively participate in its commission once it began. Sharkey also claims that the court erred in refusing to give jury instructions D-16 and D-17 on the lesser-included offense of larceny, an offense involving the theft of property valued at less than $1,000. *See* Miss. Code Ann. § 97-17-43. Sharkey contends that the proof was lacking that he was an aider and abettor in

10

the crime and that the pistol and television he took were not shown to have an aggregate value of $1,000.

¶27. During the trial, no conflicting testimony was adduced about (1) whether a robbery occurred, (2) whether the victims were held at gunpoint, and (3) who was involved—Magee, Bolden, and Sharkey. "Participation in an armed robbery is sufficient to make one a principal in the crime regardless of whether that participant was the person holding the weapon." *Strickland v. State*, 980 So. 2d 908, 922 (Miss. 2008). No factual basis supporting an instruction that a simple robbery, a robbery *without* a deadly weapon, occurred or that a mere larceny occurred. The trial court did not err in denying the lesser-included-offense instructions.

### CONCLUSION

¶28. Finding no error, we affirm Sharkey's convictions and sentences.

¶29. **AFFIRMED.**

**COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ.; COLEMAN, J., JOINS IN PART. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶30. The majority is correct that there is no reversible error. But I write separately to address the propriety of both the State and the defendant probing potential jurors about their *biases* and preconceived views of accomplice guilty pleas. I suggest such inquiries are within the trial judge's discretion when an accomplice has pled guilty and is expected to

11

testify.[3]

¶31.    It is obvious to our bench and bar that criminal practice has changed tremendously in recent years.  Gone are the days of demurrers and slews of much simpler one count, one defendant indictments.  Multi-defendant, multi-count prosecutions—where defendants, through plea agreements, become accomplice witnesses—now comprise much of our criminal dockets.  And unfortunately, until today, this Court has had very little opportunity to specifically discuss in any great depth whether parties may inquire into potential jurors' biases for or against these types of witnesses who have accepted plea bargains.

¶32.    Without question, voir dire is the appropriate procedural stage for the parties to test whether prospective jurors are challengeable for cause.  And one immediate and obvious cause for removal is *bias*.  "Trial judges must scrupulously guard the impartiality of the jury and take corrective measures to insure an unbiased jury." ***Scott v. Ball***, 595 So. 2d 848, 850 (Miss. 1992) (citations omitted).  Indeed, a "circuit judge has an absolute duty . . . to see that the jury selected to try any case is fair, impartial and competent." ***Id.*** (citing Miss. Const. art. 3, § 26; ***King v. State***, 421 So. 2d 1009, 1016 (Miss. 1982)).

¶33.    Jurors bring with them a variety of life experiences and preconceived notions when they enter a courtroom.  Individual views about self-interest, favorable treatment, leverage,

---

[3] I have previously explained that there is "nothing improper about the State or a defendant bringing up a co-conspirator's plea agreement during opening statement, so long as the reasons serve *a proper evidentiary purpose, such as suggesting bias*[.]" ***Harper v. State***, 102 So. 3d 1154, 1163-64 (Miss. Ct. App. 2012) (Maxwell, J., specially concurring) (emphasis added).  Though ***Harper*** dealt with mentioning an accomplice's guilty plea during the State's opening, I suggested that "generally both sides are entitled to address accomplice plea agreements even as early as voir dire to probe for potential juror prejudice or bias[.]" ***Id.*** at 1164.

12

motivation, and credibility run the gamut in cases involving accomplice testimony. Some potential jurors harbor very negative and hardened views of the veracity of a codefendant who cuts a plea deal and then shows up repackaged as a State witness. They may see the witness as a "snitch" not to be trusted. Other venire members cling to a completely opposite preconceived idea—that because an accomplice has already admitted guilt, the accused defendant must be guilty too.

¶34. Here, the State probed the venire about their views of the accomplice guilty pleas. This resulted in the later scenario presenting itself—the judge removing a biased juror for cause. And I agree with the majority that there was no reversible error in this process.

¶35. With that said, I am quite aware and respectful of our longstanding precedent that evidence of an accomplice's guilty plea or conviction is not competent substantive evidence to prove the remaining defendant's guilt by association.[4] Indeed, it is never admissible for that purpose. To be clear, I am not suggesting we overrule this hornbook premise. But that is not what this case is about.

¶36. Here, the State did not hold out the accomplices' guilty pleas as substantive evidence that Sharkey was guilty simply because he associated with them. Instead, the State questioned potential jurors about their preconceived views and biases about accomplice guilty pleas. Our evidentiary rules certainly authorize ferreting out bias and self-interest at

---

[4] *See* **Buckley v. State**, 223 So. 2d 524, 528 (Miss. 1969) ("[W]here two or more persons are jointly indicted for the same offense but are separately tried, a judgment of conviction against one of them is not competent evidence on the trial of the other because such plea of guilty or conviction is no evidence of the guilt of the party being tried.")

trial.[5] And this court has sanctioned inquiry into possible promises of leniency and the disposition of criminal charges pending against state witnesses, noting these are proper areas for questioning. *Hall v. State*, 476 So. 2d 26 (Miss. 1985) (holding defendant was entitled to question witness to determine if possible motives or promises exist); *Fuselier v. State*, 468 So. 2d 45, 50-52 (Miss. 1985) (holding defendant was entitled to show jury evidence of agreement where such would tend to impeach or show bias in witness testimony). While we have never addressed the pointed question of probing jurors about accomplice guilty pleas, other jurisdictions routinely permit the practice.[6] Perhaps the Kentucky Supreme Court put

_____

[5] *See* Miss. R. Evid. 616 ("Evidence of a witness's bias, prejudice, or interest—for or against any party—is admissible to attack the witness's credibility.").

[6] *See* *State v. Baumann*, 610 P.2d 38, 43 (Ariz. 1980) (finding no abuse of discretion in the trial court's asking prospective jurors' about their "ability to judge the testimony of a witness indicted in a related cause number and who, as part of a plea bargain, agreed to testify at appellant's trial," because "[t]he purpose of voir dire examination is to determine whether prospective jurors can fairly and impartially decide the case at bar and the scope of such examination is within the sound discretion of the trial judge"); *State v. Smith*, 700 A.2d 91, 93-94 (Conn. Ct. App. 1997) (holding it was proper for both the state and defendant to question potential jurors about their objectivity in assessing the credibility of prosecution witnesses who were testifying in exchange for the state's agreement to *nolle pros* certain drug charges); *Evans v. State*, 808 So. 2d 92, 106 (Fla. 2001) (holding that, in a case that strongly relied on the State's witness who had entered a plea bargain, "it was proper for the State to inquire into whether any of the potential jurors would harbor any biases against a witness who had accepted a plea bargain"); *Hopkins v. State*, 429 N.E.2d 631, 635 (Ind. 1981) ("see[ing] nothing wrong in inquiring into jurors' minds about their biases in regard to the credibility of witnesses with an eye toward removing prospective jurors predisposed to disbelieve those with certain characteristics, such as plea bargainers"); *State v. Dudley*, 51 S.W.3d 44, 54 (Mo. Ct. App. 2001) ("In voir dire, the State is entitled to elicit from prospective jurors any preconceived notions that they might have concerning the law and to ask specifically whether they would refuse to consider the testimony of State witnesses with the benefit of a plea agreement."); *State v. McCray*, 91 N.E.3d 288, 297 (Ohio Ct. App. 2017) (quoting *State v. Lundgren*, 653 N.E.2d 304, 317 (Ohio 1995)) (holding that a prosecutor may not only validly explore the possibility that prospective jurors might be predisposed to discount the testimony of inmate witnesses but also may to try to "'draw the

14

it best:

> It has long been the rule in this Commonwealth that it is improper to show that a co-indictee has already been convicted under the indictment. However, . . . [the rule] bars only the "blatant use of the conviction of a co-indictee as substantive evidence of guilt of the indictee now on trial." . . . [To the contrary], a statement posed during voir dire is not substantive evidence. Secondly, it is quite routine practice for the Commonwealth to question prospective jurors about whether previous charges or convictions of its witnesses and/or deals made with them by the Commonwealth will prohibit the jurors from giving such witnesses a fair hearing.

*Mayse v. Commonwealth*, 422 S.W.3d 223, 226 (Ky. 2013) (internal citations and quotations omitted).

¶37.  Furthermore, while I have the utmost respect for my dissenting colleague, I strongly disagree with the dissent's assertion that the mere mention of an accomplice's guilty plea always amounts to reversible error—unless the defendant desires to bring it up. Such a view misses the intent of the original rule, is one sided, and is not the law in Mississippi. And I have not found a single American court that shares this notion in cases like this, where the plea agreement is not being offered as substantive evidence.

¶38.  We must keep in mind that the original prohibition against mention of accomplice guilty pleas was aimed to curb a sharp practice that is not at issue here—the State offering

---

sting' from the unfavorable fact that [some of] the state witnesses were accomplices and had plea-bargained to minimize their criminal exposure").

15

an accomplice's confession,[7] guilty plea,[8] or evidence that the accomplice had been convicted by a prior jury[9] as substantive evidence of the remaining defendant's guilt.

¶39.    Instead of recognizing this distinction, the dissent brushes with broad strokes, stretching the original protection beyond its intended purpose.  In doing so, it places heavy emphasis on *Ivy*, *Johns*, and similar cases like *McCray v. State*, in which this Court's "primary concern [was] with the consequences" of a deputy circuit clerk being called as a witness to introduce "a certified copy of the co-indictee's conviction and sentence" as *substantive evidence* of the remaining defendant's guilt.  *McCray v. State*, 293 So. 2d 807, 807-08 (Miss. 1974).  It is also quite a leap for the dissent to claim that *McCray* and *Ivy* noted that "defendants have a 'constitutional right' that protects them from having the guilt of their co-indictee made known."  Dis. ¶64.  Neither of those cases say that.  Rather, what was violative of the defendant's rights to a "fair trial" in *McCray* and *Ivy* was the State's use of an accomplice's guilty plea and another jury's guilty verdict as substantive evidence of the defendants' guilt.  *See McCray*, 293 So. 2d at 808-09; *Ivy*, 301 So. 2d at 293. Once more,

---

[7] *West v. State*, 169 So. 770 (Miss. 1936) (holding that a copy of accomplice's post-trial confession implicating defendant was incompetent substantive evidence of defendant's guilt).

[8] *State v. Thornhill*, 251 Miss. 718, 721, 726-27, 171 So. 2d 308, 312 (1965) (holding that the record of conviction of two co-defendants who had entered guilty pleas but were not called as witnesses was incompetent evidence of remaining defendant's guilt).

[9] *Ivy v. State*, 301 So. 2d 292 (Miss. 1974) (holding that evidence that witness had been tried by a jury and found guilty of the same crime for which the defendant was being tried was not competent evidence of remaining defendant's guilt). *See also Johns v. State*, 592 So. 2d 86 (Miss. 1991); *Henderson v. State*, 403 So. 2d 139 (Miss. 1981); *Griffin v. State*, 293 So. 2d 810, 812-13 (Miss. 1974).

16

that is not what happened here and is not what this case is about.

¶40.    Another pertinent truth that the dissent misses is that in recent years our Court has consistently refused to reverse where accomplice guilty pleas were broached—even by the State—for purposes other than substantive evidence.  On balance, I find that *stare decisis* requires this Court to also recognize these more recent precedents—several of which expressly distinguish the very cases the dissent relies on and illustrate that the dissent's narrative is overly broad and incorrect.

¶41.    For example, in *White v. State*—a post-rules-of-evidence case, in which the State informed the venire "that White's accomplices had earlier pled guilty to the burglary at issue"—this Court found no reversible error in mentioning the guilty pleas to the venire or in the later testimony about them.  *White v. State*, 616 So. 2d 304, 305 (Miss. 1993).  Justice Banks, writing for the unanimous Court in *White*, coined the disclosure of the codefendants' guilty plea testimony as "essentially an evidentiary issue."  *Id.* at 307.  This Court did not treat it as a constitutional violation or view it as the death knell that the dissent suggests.  Rather, quite to the contrary, our Court openly acknowledged that "[f]ederal and state appellate courts have found the admission of a co-conspirator's plea of guilty, while incompetent as substantive evidence of the defendant's guilt, may be admissible for other purposes."  *Id.* (citing *United States v. Medley*, 913 F.2d 1248, 1257-58 (7th Cir. 1990); *United States v. Davis*, 766 F.2d 1452, 1456 (10th Cir. 1985); *United States v. Wiesle*, 542 F.2d 61, 62-63 (8th Cir. 1976); *People v. Brunner*, 797 P.2d 788, 789 (Colo. Ct. App. 1990); *State v. Padgett*, 410 N.W.2d 143, 146 (N.D. 1987)); *State v. Braxter*, 568 A.2d 311, 316

17

(R.I. 1990)). As support for this pronouncement, the Court in *White* pointed to several cases illustrating that an accomplice's guilty plea, though inadmissible to prove a defendant's guilt, could be properly offered for impeachment purposes. *Id.* (citing *State v. Braxter*, 568 A.2d 311, 316 (R.I. 1990) (guilty plea of accomplice in trial of defendant on same charge admissible when introduced to impeach accomplice, but inadmissible to demonstrate guilt of defendant); *State v. Rothwell*, 303 S.E.2d 798, 800-01 (N.C. 1983) (guilty plea of co-conspirator admissible when admitted for "legitimate purpose" but never as evidence of defendant's guilt); *Greer v. State*, 188 Ga. App. 808, 374 S.E.2d 337, 338 (1988) (no error for admission of accomplice's guilty plea to same crime for which defendant is charged where the plea was introduced during the accomplice's testimony and the accomplice was subject to cross-examination by defendant)).

¶42.    Among those permissible purposes mentioned in *White* was that a guilty plea may also be a prior consistent statement with the testimony that the accomplice gives at the trial of his codefendant.[10] *White*, 616 So. 2d at 307-08. And in recent years, this Court has continued to recognize as much, consistently refusing to reverse cases just because a testifying accomplice has been questioned about or mentioned his or her earlier guilty plea. *See Hathorne v. State*, 759 So. 2d 1127, 1132 (Miss. 1999) (finding no reversible error where testifying accomplice mentioned earlier guilty plea, because such was evidence of a prior consistent statement, admissible under Miss. R. Evid. 801(d)(1)); *Clemons v. State*, 733 So.

---

[10] Specifically, the Court noted that "a plea of guilty . . . is[] a prior admission of guilt, which is consistent with the testimony at trial. This is a significant distinction because prior statements have evidentiary value different from prior findings of other tribunals." *White*, 616 So. 2d at 307.

18

2d 266, 271 (Miss. 1999); *Henderson v. State*, 732 So. 2d 211, 215 (Miss. 1999).

¶43.    In fact, in *Wallace v. State*, this Court expressly distinguished the State impeaching a codefendant turned witness with his guilty plea from the tactics used in *Ivy*, *McCray*, *Buckley*, and *Pieper*[11]—all relied upon by the dissent—because in those cases, "the purpose of the co-indictee's testimony was for substantive evidence and to bolster the testimony of the co-indictee." *Wallace v. State*, 466 So. 2d 900, 905 (Miss. 1985). And in *Wallace*, the plea agreement was used by the State "for the purpose of impeachment and attacking the credibility of the witness . . . ." *Id.* at 906.

¶44.    I mention these cases because a balanced analysis requires an understanding and acknowledgment of why this Court originally prohibited the mention of guilty pleas, while also recognizing this Court's more recent and relevant pronouncements, which are more in line with today's widespread handling of accomplice guilty pleas.

¶45.    Credibility issues are always front and center in cases built on accomplice testimony. And there is no rational reason why either the State or defendant should be hamstrung from addressing early on the inherent biases that are always afoot on jury panels about guilty pleas of accomplices expected to testify. Mention of such plea agreements could be made as early as voir dire or opening, addressed through vigorous impeachment by the defendant when cross examining an accomplice, or brought up preemptively by the State to blunt credibility attacks.[12]  Any mention could certainly be accompanied by a limiting instruction crafted to

---

[11] *Pieper v. State*, 242 Miss. 49, 134 So. 2d 157 (1961).

[12] The Fifth Circuit has held that, where a co-defendant testifies at trial and is "subject to the rigors of cross-examination," the government's "disclosure of the guilty plea to blunt

caution the jury accordingly.[13]

¶46. Contrary to the dissent's assertion, the pendulum obviously swings both ways on this issue. As the Missouri Court of Appeals has noted:

> Such *voir dire* questions are allowed as being relevant because, any time the State enters into a plea agreement with a witness, the issues of bias and self interest arise, since plea agreements are "double-edged swords," that not only support a witness'[s] credibility by showing an interest to testify truthfully, but also impeach a witness'[s] credibility by showing an interest in testifying favorably for the government, regardless of the truth.

*State v. Dudley*, 51 S.W.3d 44, 54-55 (Mo. Ct. App. 2001) (internal citations and quotations omitted). And one thing is certain, at least as far as voir dire is concerned. If this Court were to accept the dissent's view and find reversible error or grounds for a mistrial with any mention of an accomplice's guilty plea during voir dire, neither the State nor the defendant will ever uncover the lurking biases and preconceived notions about a question undoubtedly on the jurors' minds—an issue which history has shown will at some point in trial rear its head.

**RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ., JOIN THIS**

---

the impact of attacks on [the co-defendant's] credibility serves a legitimate purpose and is permissible." *United States v. Veltre*, 591 F.2d 347, 349 (5th Cir. 1979) (citing *United States v. King*, 505 F.2d 602, 607 (5th Cir. 1974)). And in that same vein, criminal defendants are entitled—from the get-go—to disclose a co-defendant's guilty plea to plant the seeds of doubt in the jury's mind, which might discredit a testifying co-defendant.

[13] According to the Fifth Circuit, "[a] witness-accomplice guilty plea may be admitted into evidence if it serves a legitimate purpose and a proper limiting instruction is given." *United States v. Marroquin*, 885 F.2d 1240, 1247 (5th Cir. 1989). Potential prejudice may be reduced by instructing the jury that "the fact that an accomplice has entered a plea of guilty to an offense charged is not evidence, in and of itself, of the guilt of any other person" and that such testimony should be "received with caution and weighed with great care." *United States v. Valuck*, 286 F.3d 221, 228 (5th Cir. 2002).

**OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶47.    A prejudicial error occurred in this case. During *voir dire* examination, the prosecutor informed the potential jurors that Eric Sharkey's co-indictees already had pled guilty to the crime for which Sharkey was about to be tried. The circuit court took no curative action, even after one venireman announced—in the presence of the entire *venire*—his inability to be fair and impartial in light of "the other two being convicted." This Court's precedent directs us to reverse under these circumstances. With much respect to my learned colleagues, I dissent.

¶48.    Eric Sharkey, Madison Magee, and Marvin Bolden were indicted for two counts of armed robbery and possession of a firearm by a convicted felon. Prior to Sharkey's trial, Magee and Bolden had pled guilty and were serving time for the same crime for which Sharkey was to be tried.

¶49.    The following colloquy took place during *voir dire* examination:

>  PROSECUTOR:     Now, as I kind of referenced a minute ago, *Mr. Sharkey was one of three people that has been indicted for this. . . . And the law in the [S]tate of Mississippi is that everybody gets their own day in court. . . . Today and tomorrow is Mr. Sharkey's day. . . . Is anybody going to hold it against the State of Mississippi or the defense, the fact that they did not get to hear the other two cases, Mr. Magee and Bolden?*
>
>  . . . .
>
>  Now, *the reason you're not going to hear their case is because Mr. Bolden and Mr. Magee have already plead* [sic] *guilty to this crime and are currently serving a jail sentence*. Does anybody - -

21

| | |
|---|---|
| DEFENSE: | Objection to that. Your Honor, can we approach? |
| THE COURT: | Yes. |
| | (Bench conference not reported) |
| THE COURT: | I'm going to overrule it. Anybody can impeach a witness. |
| | . . . . |
| PROSECUTOR: | *Now, given the fact that Mr. Magee and Mr. Bolden are serving a jail sentence on that*, is anybody going to give - - automatically going to give their testimony less weight? Are you able to judge it just like you do every other piece of evidence that's come before you? |

Soon after the above exchange, the dialogue continued, in the presence of the entire *venire*, as follows:

| | |
|---|---|
| PROSECUTOR: | Is there anything that you guys need us to know that you think may affect your ability to be fair and impartial in this case? Yes, sir. Number 42, Mr. Gonzalez. |
| VENIREMAN: | Yes, sir. |
| PROSECUTOR: | Yes, sir. |
| VENIREMAN: | *I have a little trouble getting over the statement about the other two being convicted. I* - - |
| PROSECUTOR: | May we approach on this matter, Your Honor? |

The remaining conversation consists of a bench conference that took place outside of the presence of the *venire*.

| | |
|---|---|
| VENIREMAN: | I just wanted to be honest. *I had an issue once I heard that statement.* I've raised my kids that when you're flocked together, who you hang with, what they do, it's who you represent[;] it's who you are. Once I heard that, I'm honestly having an issue. |

22

PROSECUTOR:    You think you may not be able to be fair to both sides?

VENIREMAN:    Once I heard that, in all honesty, my first thought in my mind was if he was with them there, they're obviously not in the right, and he's probably not in the right as well. So that's just the way I feel.

PROSECUTOR:    So you've kind of formulated an opinion already?

VENIREMAN:    Unfortunately, yes, sir, I have.

PROSECUTOR:    You feel it would be hard to set that aside?

VENIREMAN:    I actually paused - - through the whole questions, I was trying to figure that out in my mind, but I am having a hard time. Yes, sir. The first thing that came to my mind.

THE COURT:    There are no right answers or wrong answers. We just want truthful answers.

PROSECUTOR:    *Since those two men have pled guilty and this man is here, it makes you feel that he's guilty also, is that what you're trying to say?*

VENIREMAN:    *Yes, sir*.

¶50.    Subsequently, the venireman was struck for cause, and Sharkey moved for a mistrial. The trial court not only denied the motion but also failed to give any curative instruction to the remaining *venire* members or the empaneled *petit* jury. This was error.

¶51.    The longstanding rule in Mississippi is that when two or more people are indicted jointly for crimes arising from the same event or occurrence, a judgment of conviction against, or a plea of guilty by, one of them is not competent evidence against the party being tried. **Robinson v. State**, 465 So. 2d 1065, 1068 (Miss. 1985); **State v. Thornhill**, 251 Miss. 718, 726-727, 171 So. 2d 308, 312 (1965) ("[T]he record of conviction of another person is

23

not competent evidence to show the guilt of a defendant. The fact alone that one person is guilty of [a crime] is no proof that another person is guilty.").

¶52.  On many occasions, this Court, employing strong language, has reversed and remanded cases when the conviction or guilty plea of a co-indictee had been revealed improperly to a jury. *Johns v. State*, 592 So. 2d 86 (Miss. 1991); *Ivy v. State*, 301 So. 2d 292 (Miss. 1974); *McCray v. State*, 293 So. 2d 807 (Miss. 1974); *Buckley v. State*, 223 So. 2d 524 (Miss. 1969); *Pieper v. State*, 242 Miss. 49, 134 So. 2d 157 (1961); *West v. State*, 169 So. 770 (Miss. 1936); *Pickens v. State*, 129 Miss. 191, 91 So. 906 (1922); *Lynes v. State*, 36 Miss. 617 (1859).

¶53.  In *Pickens*, three men, including Pickens, were charged with murder. *Pickens*, 91 So. at 906. At trial, the court allowed the guilty plea of one of the men and the conviction of the other into evidence. *Id.* This Court condemned the State's use of this evidence against Pickens: "It seems needless for us to say that the [trial] court committed *grave and fatal* error in permitting this testimony to be introduced by the [S]tate." *Id.* (emphasis added).

¶54.  In *Buckley*, we observed the following:

> Appellant assigns as error the action of the trial court in overruling his objection to that part of the testimony of Pitts wherein he testified that he had been jointly indicted with Buckley on the charge of Kidnapping Jack Watkins and that he had plead [sic] guilty to that charge, and as a result of his plea of guilty, had been sentenced to serve a term of five years in the state penitentiary. The overruling of this objection and admission of this testimony was reversible error. The law is well settled in this state that whe[n] two or more persons are jointly indicted for the same offense but are separately tried, a judgment of conviction against one of them is not competent evidence on the trial of the other because such plea of guilty or conviction is no evidence of the guilt of the party being tried. . . . Not only was this testimony designed to lead the jury to believe that since Pitts had plead [sic] guilty to the charge, that his

24

co-indictee, Buckley, was also guilty, but it was also designed to bolster the testimony of Pitts.

*Buckley*, 223 So. 2d at 527–28.

¶55.    In *Ivy*, the Court reiterated these principles:

> The jury thus had before it evidence of the co-indictee's conviction and sentence from which it could very likely conclude that Ivy was guilty because his associate and co-indictee was convicted and sentenced, or more modernly put, the jury could find that he was guilty by association.
>
> We have consistently held evidence of this nature to be *inimical to fair trial*.

*Ivy*, 301 So. 2d at 293 (emphasis added).

¶56.    These prior decisions all assign as error use of evidence of a co-indictee's conviction and sentence. That being beyond dispute, the question becomes whether the error requires reversal.

¶57.    The State argues that the error here was harmless because the statement was made during *voir dire* and was not introduced into evidence. First, this Court has suggested that this type of error falls under a "definitive standard" that requires reversal as a violation of a defendant's right to a fair and impartial trial, rather than a "case-by-case evaluation of [harmless] error" analysis:

> The very essence of liberty and justice requires that fundamental rights be measured and enforced by certain standards and uniform rules. These standards should not be compromised to attain a good but temporary purpose[14] since it is inevitable that some wrong will be found to exist under any rule, and extreme cases will arise making a departure from fixed principles seem advantageous for the moment. It is this Court's opinion, however, that

---

[14]The "good but temporary purpose" to which the *McCray* Court referred was affirming the judgment of conviction against Leroy McCray, because "abundant evidence establishing the commission of a crime [had been adduced.]" *Id.* at 808.

adherence to a definitive standard will result in less injustice and enhance stability in law in the long run more than would a case-by-case evaluation of error to determine whether it was 'harmless,' 'probably harmless,' 'not so harmless,' 'harmful,' 'grossly harmful,' the last category equating to prejudice, requiring reversal.

*McCray*, 293 So. 2d at 809–10. The *McCray* Court made this decision after observing that this particular issue, which implicates a defendant's "fundamental right to a fair trial," cannot be deemed harmless, even when the evidence points heavily to the defendant's guilt:

> This is not one of those cases for the application of the rule that a conviction will be affirmed unless it appears that another jury could reasonably reach a different verdict upon a proper trial than that returned on the former one, but rather it is a case where the constitutional right of an accused to a fair and impartial trial has been violated. When that is done, the defendant is entitled to another trial *regardless of the fact that the evidence on the first trial may have shown him to be guilty beyond every reasonable doubt*. The law guarantees this to one accused of crime, and until he has had a fair and impartial trial within the meaning of the Constitution and Laws of the State, he is not to be deprived of his liberty by a sentence in the state penitentiary.

*Id.* at 809 (emphasis added) (quoting *Scarbrough v. State*, 204 Miss. 487, 37 So. 2d 748 (1948)).

¶58.    Second, the prejudicial nature of the statement is not somehow lost because it was said during *voir dire* rather than in the evidentiary stage of trial. In *McCray*, the prosecutor revealed the co-indictee's conviction in his opening statement, *id.* at 807, and opening statements, like statements made in *voir dire*, do not constitute evidence. *Slaughter v. State*, 815 So. 2d 1122, 1132 (¶ 53) (Miss. 2002).

¶59.    Third, the reason that the Court has announced this rule many times is demonstrated by this record. The prosecutor gratuitously and improperly revealed that the codefendants, both of whom were State's witnesses, had been adjudicated guilty of the offense for which

26

Sharkey was about to be tried. In response to the prosecutor's revelation, a potential juror said, in the presence of the entire venire, "I have a little trouble getting over the statement about the other two being convicted." During the subsequent bench conference, the venireman affirmed the following statement: "Since those two men have pled guilty and this man is here, it makes you feel that he's guilty also." The venireman articulated, clearly and succinctly, the principal reason Mississippi courts have adhered to the rule for more than one hundred and fifty years.

¶60.    The other reason courts disallow the prosecution's revelation of the convictions or guilty pleas of co-indictees is that they inform the jury that a judicial determination has been made respecting the *corpus delicti*[15] of the crime. **West**, 169 So. at 770. This signals to the jury that it need not decide whether a crime has occurred, only whether *this* defendant had a part in committing it. This is a problem that this Court has found prejudicial.[16]

¶61.    Even if this Court were inclined to overrule its holding in **McCray**, which it has not done, the error in the present case cannot be deemed harmless. This Court has suggested that,

---

[15]*Corpus delicti* translates literally as the "body of the crime," which means the collection of evidence used to establish the fact that a crime has occurred, as distinguished from the person who committed it. *Corpus delicti*, Black's Law Dictionary (10th ed. 2014).

[16]    We do not speculate whether this testimony was introduced for the purpose of deliberately prejudicing McCray's defense by the use of evidence which this Court has repeatedly condemned or that it was introduced under the mistaken belief that the conviction of a co-indictee was *the best evidence that a crime had been committed* so that McCray's guilt as an accessory could be established since *in either event it was prejudicial*.

*McCray*, 293 So. 2d at 808 (emphasis added).

27

under the right circumstances, a statement pertaining to the guilt of a co-indictee can be cured by proper and timely instruction from the trial judge. In **Reid v. State**, 266 So. 2d 21, 27 (Miss. 1972), the district attorney revealed, during *voir dire*, that a codefendant of Jimmy Reid had been tried and sentenced the week before his trial began. Reid moved for a mistrial, which was denied. *Id.* at 28. In affirming that decision, this Court explained that "[t]he trial judge promptly instructed the jury to disregard any statement relative to the trial of anyone else and did everything in his power to erase from the minds of the jury the remarks of the district attorney." *Id.* The trial court also granted a jury instruction that further admonished the jury to "give absolutely no thought to the verdict of the former jury[.]" *Id.* This Court determined that any prejudice resulting from the error had been cured by the trial court. *Id.*

¶62. But **Reid** does not extend to those cases in which the trial court undertakes no curative action after a defense objection. Indeed, courts throughout the United States have recognized that, after a co-indictee's guilt is revealed, a trial court's failure to instruct the jury or to otherwise cure the prejudice necessarily renders the error reversible as opposed to harmless. **Babb v. United States**, 218 F.2d 538, 542 (5th Cir. 1955); **State v. Ferrone**, 113 A. 452, 455 (Conn 1921); **State v. Fenton**, 499 S.W.2d 813, 816 (Mo. App. 1973); **Pryor v. State**, 245 P. 669, 672 (Okla. Crim. App. 1926); **State v. Peters**, 107 A.2d 428, 432 (R.I. 1954).

¶63. Respectfully, I disagree with the special concurrence's characterizations of some of the changes in our State's criminal practice.[17] My distinguished colleague focuses heavily on

---

[17]For example, the special concurrence discusses how multi-defendant, multi-count prosecutions now comprise much of the criminal dockets. However, multi-defendant prosecutions existed in Mississippi before it became the nation's twentieth state. *Statutes of the Miss. Territory*, § 47 (1807). And one of the first few cases decided under statehood

28

the use of a co-indictee's conviction, confession, or guilty plea to uncover bias. But the probing of jurors for bias, as well as the use of evidence to show bias, are phenomena that predate many of the cases cited herein. *Vicksburg Ice Co. v. Delta Ice Co.*, 119 So. 824, 824 (Miss. 1929); *Beason v. State*, 34 Miss. 602, 604 (1857). So our judicial ancestors were well aware of the issue of bias when they "held evidence of this nature to be inimical to [a] fair trial." *Ivy*, 301 So. 2d at 293.

¶64. The special concurrence also implies that our one-hundred-and-fifty year old rule somehow restricts defendants from addressing the guilt of their co-indictees. However, the accused is not hamstrung by the rule. As noted in *McCray* and *Ivy*, defendants have a "constitutional right" that protects them from having the guilt of their co-indictee made known. *McCray*, 293 So. 2d at 809 (This "is a case where the *constitutional right* of an accused to a fair and impartial trial" has been implicated.) (emphasis added); s*ee also Ivy*, 301 So. 2d at 293. If the accused determines that the benefit of potentially uncovering bias outweighs the prejudice from which he enjoys constitutional protection, then he is free to waive that constitutional protection. *Hannah v. State*, 943 So. 2d 20, 24 (¶ 8) (Miss. 2006) (noting circumstances under which constitutional rights can be waived).

¶65. By contrast, the State has no constitutional right against having the guilt of a

---

recognizes the propriety of multi-defendant prosecutions. *State v. Blennerhassett*, 1 Miss. 7, 16 (1818).

Mult-count indictments first were authorized by statute effective July 1, 1986. Miss. Code. Ann. § 99-7-2(1) (Rev. 2015); *see also McCarty v. State*, 554 So. 2d 909, 914 (Miss. 1989) (discussing multi-count indictments and the enactment of Section 99-7-2(1)). That statute has been superseded by Mississippi Rule of Criminal Procedure 14.2.

defendant's co-indictee exposed. "[T]he United States Constitution protects individuals from government action[,]" not the government from individual action. ***Dissmeyer v. State***, 249 P.3d 444, 449 (Kan. 2011). The constitutional bulwark is one that the accused can breach, but not the State.[18] The special concurrence denominates this analysis as one-sided, and I wholeheartedly agree with that characterization. The constitutional rights, liberties, and protections afforded the people, as against the government, are indeed one-sided and were so intended by the founders. As the Preamble to the United States Constitution articulates, the "Blessings of Liberty" are secured onto "the People," not the government.[19]

¶66.    I fail to see how the prejudice this issue causes is at all diminished by any changes in our criminal practice, especially when this record so poignantly demonstrates otherwise.

----

[18]That said, if the defendant opens the proverbial door to a co-indictee's guilt, then it is axiomatic that the State then would have an opportunity to address the issue as well.

[19]In ***Isom v. Mississippi Central Railroad Co.***, 36 Miss. 300, 311 (1858), this Court wrote artfully and accurately on the protections that the Constitution affords the individual:

> But the natural tendency of power and wealth to accumulate inordinately, the strong proclivity of every department in popular governments, to consult the good of the many, at the expense of the rights of the few, here as elsewhere, in all time past, leave but little hope that the utmost caution, formally embodied in written constitutions, will ever secure that perfect protection to individual right, which was designed, and is desired, by the great body of the people. . . . Hence the great necessity, on the part of the judicial department, to scrutinize well, not only the conduct of the other departments, in cases appealing to it for protection against such encroachments, but especially to guard itself against the natural influences, which the clamors of the powerful many are calculated to exert. So that the humblest, weakest citizen, claiming a legal right, may assert it, against the interests or combinations of the many, or the public even, with a full confidence that neither public necessity, public utility, nor public convenience, the pleas of all despotism, shall prevail against a single private right, secured by our constitution and laws.

Although the prosecutor's purpose in this case ostensibly was to uncover bias—as opposed to offering the prior guilty pleas as substantive evidence—the revelation of the prior guilty pleas induced a *venire* member to believe the defendant was guilty by association with his already convicted codefendants. Since such a result is possible and, moreover, actually occurred in this case, how can we say that merely offering the evidence for a different purpose mitigates its damage?

¶67.    Despite this problem, courts have held, as the special concurrence notes, that it is possible for the prejudice to be cured, but only when trial courts take timely curative action. ***United States v. Davis***, 487 F.2d 112, 120 (5th Cir. 1973) ("Both this [c]ourt . . . and other courts . . . have stressed as controlling the existence and adequacy of the trial court's cautionary instructions in a situation where the jury is made aware of a codefendant's guilty plea entered prior to giving evidence for the government.") (citations omitted). *See **United States v. Marroquin***, 885 F.2d 1240, 1247 (5th Cir.1989) ("A witness-accomplice guilty plea may be admitted into evidence if it serves a legitimate purpose *and a proper limiting instruction is given*.") (emphasis added). *See also*, ***United States v. Valuck***, 286 F.3d 221, 228 (5th Cir. 2002) (noting the importance of a limiting instruction); ***Reid***, 266 So. 2d at 27 (same).

¶68.    In the case at hand, though, no limiting or cautionary instruction was given by the circuit court. No steps were taken to cure the prejudice inflicted upon Eric Sharkey, and many of the foregoing decisions found reversible error under less deleterious circumstances.

¶69.    To reiterate, the prejudice in this case was compounded by Juror Number 42's

31

announcement, in the presence of the entire *venire*, that "I have a little trouble getting over the statement about the other two being convicted." In light of this statement, the other prospective jurors were left to wonder whether they too had trouble getting over the revelation, especially in the absence of a judicial admonition to disregard it. On this record, we cannot know how the jurors were affected, because they were not polled, and the circuit court did not otherwise instruct the jurors following the defense's objection. The circuit court should have ordered a mistrial. In the absence of such a ruling, at the least it should have admonished the jury in accordance with **Davis** and **Reid**. It cannot be said that this error was harmless beyond a reasonable doubt. **McCray**, 293 So. 2d at 809 ("All dangers emanating from the use of this incompetent evidence would necessarily militate against a fair and impartial trial under the laws of this state."). *See also*, **United States v. Harrell**, 436 F.2d 606, 617 (5th Cir. 1970) ("[W]e think that the evidentiary purpose ordinarily to be served by proof of a co-defendant's plea of guilty is so shadowy, so insubstantial that it would be the better practice in run-of-the-mill cases to exclude such proof altogether.").

¶70.    We would do well to heed the pronouncements of our early Court:

> The legal theory of a trial by jury is the selection of an impartial body from the county, and its trial of the case free from any influence except that produced by the testimony and law and legitimate argument, and any subjection of the jury to any other influence is carefully guarded against. Twelve men must concur in preferring a charge of felony before one can be held to answer; and twelve men, elected, impaneled, and sworn to try the issue joined, must concur in a verdict of guilty before the humblest can by our law be deprived of his liberty; and such is the jealousy with which trial by jury is guarded that, when it is made to appear that *anything has occurred which may have improperly influenced the action of the jury*, the accused will be granted a new trial, *although he may appear to be ever so guilty*, because it may be said that his guilt has not been ascertained in the manner prescribed by law, and every one

is to be judged by the law.

***Lamar v. State***, 64 Miss. 687, 692, 2 So. 12, 14 (1887) (emphasis added).

¶71.    Our precedent, and the principles of a fair and impartial trial espoused by the Constitutions of the United States and Mississippi, demand reversal of this conviction. Because the majority does otherwise, I respectfully dissent.

**KING, P.J., JOINS THIS OPINION.**